NOV 2 1 2002

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| CHRIS SCHULTZ, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 01 C 0702 |
| | ) | |
| vs. | ) | Hon. Milton I. Shadur |
| | ) | |
| ADVOCATE HEALTH and HOSPITALS | ) | Magistrate Judge Ashman |
| CORPORATION, ELMER JOHNSON and | ) | |
| BRIAN CORNELISON, | ) | |
| Defendants. | ) | |

**FILED**

NOV 1 4 2002

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**RECEIVED**

NOV 1 4 2002

MILTON I. SHADUR
SENIOR U.S. DISTRICT JUDGE

## NOTICE OF MOTION

TO:   Charles Siedlecki, Esq.
      Charles Siedlecki & Associates, P.C.
      15 Spinning Wheel Road, Suite 328
      Hinsdale, Illinois 60521

PLEASE TAKE NOTICE that on Tuesday, November 19, 2002 at 9:15 a.m., we shall appear before the Honorable Judge Shadur, or whomever may be sitting in his stead, in the United States District Court for the Northern District of Illinois, Eastern Division, 219 South Dearborn Street, Chicago, Illinois 60604, and present Defendants' Renewed Motion for Judgment as a Matter of Law, a copy of which is attached hereto and hereby served upon you.

Respectfully submitted,

ADVOCATE HEALTH and HOSPITALS
CORPORATION, BRIAN CORNELISON and
ELMER JOHNSON

By _____
        One of Their Attorneys

Joan E. Gale
David E. Metz
Seyfarth Shaw
55 East Monroe Street
Suite 4200
Chicago, Illinois 60603
(312) 346-8000

November 14, 2002

CH1 10449481.1

4/1

NOV 2 1 2002

FILED
NUV 1 4 2002

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

RECEIVED

NOV 1 4 2002

MILTON I. SHADUR
SENIOR U.S. DISTRICT JUDGE

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

CHRIS SCHULTZ,                          )
                                        )
            Plaintiff,                  )     Case No. 01 C 0702
                                        )
vs.                                     )     Hon. Milton I. Shadur
                                        )
ADVOCATE HEALTH and HOSPITALS           )     Magistrate Judge Ashman
CORPORATION, ELMER JOHNSON and          )
BRIAN CORNELISON,                       )
            Defendants.                 )

**DEFENDANTS' RENEWED MOTION**
**FOR JUDGMENT AS A MATTER OF LAW**

Defendants Advocate Health and Hospital Corporation ("Advocate"), Elmer Johnson

("Johnson") and Brian Cornelison ("Cornelison") (collectively "Defendants"), pursuant to Fed.

R. Civ. P. 50, hereby renew their Motion for Judgment as a Matter of Law as to all of Plaintiff

Chris Schultz' claims.  For the reasons set forth in Defendants' Memorandum of Law in Support

of Their Renewed Motion for Judgment as a Matter of Law, submitted herewith, Schultz failed

to present any evidence at trial upon which a reasonable jury could have found in his favor on his

claims for violation of the FMLA and for intentional infliction of emotional distress.  Therefore,

the Court should set aside the jury's verdict and enter judgment as a matter of law in favor of

Defendants on all Counts of Schultz' First Amended Complaint.

41

Respectfully submitted,

ADVOCATE HEALTH and HOSPITALS
CORPORATION, BRIAN CORNELISON and
ELMER JOHNSON

By _____
      One of Their Attorneys

Joan E. Gale
David E. Metz
Seyfarth Shaw
55 East Monroe Street
Suite 4200
Chicago, Illinois 60603
(312) 346-8000

November 14, 2002

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that he caused a true and correct copy of Defendants'

Renewed Motion for Judgment as a Matter of Law to be served upon:

> Charles Siedlecki, Esq.
> Charles Siedlecki & Associates, P.C.
> 15 Spinning Wheel Road, Suite 328
> Hinsdale, Illinois 60521

via overnight delivery on this 14th day of November, 2002.

David E. Metz

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| CHRIS SCHULTZ, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 01 C 0702 |
| | ) | |
| vs. | ) | Hon. Milton I. Shadur |
| | ) | |
| ADVOCATE HEALTH and HOSPITALS | ) | Magistrate Judge Ashman |
| CORPORATION, ELMER JOHNSON and | ) | |
| BRIAN CORNELISON, | ) | |
| Defendants. | ) | |

**RECEIVED**
NOV 1 4 2002
MILTON I. SHADUR
SENIOR U.S. DISTRICT JUDGE

**FILED**
NOV 1 4 2002

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

Defendants Advocate Health and Hospital Corporation ("Advocate"), Elmer Johnson ("Johnson") and Brian Cornelison ("Cornelison") (collectively "Defendants"), pursuant to Fed. R. Civ. P. 50, hereby submit this Memorandum of Law in Support of Their Renewed Motion for Judgment as a Matter of Law.[1]

## INTRODUCTION

At the close of Plaintiff Chris Schultz' case, Defendants moved for judgment as a matter of law as to Schultz' claim for intentional infliction of emotional distress ("IIED"). At the close of all of the evidence and before the case was submitted to the jury, Defendants moved for judgment as a matter of law as all of Schultz' claims. The Court denied these motions and submitted the case to the jury on October 29, 2002. On October 30, 2002, the jury returned a verdict in favor of Schultz and against Advocate on Schultz' claims under the FMLA and in favor of Schultz and against all Defendants on Schultz' IIED claim. While no damages were assessed against Advocate under Schultz' FMLA claims -- the Court is going to determine such

---

[1] Defendants are filing this brief before they have received the full trial transcript and within ten days of the Court's statement that it was entering judgment on the jury's verdict.

damages -- the jury did assess both compensatory and punitive damages against all Defendants on Schultz' IIED claim.

Defendants now renew their motion for judgment as a matter of law as to all of Schultz' claims. Based on the evidence presented at trial, no reasonable jury could have found in favor of Schultz on his IIED claim. In fact, based upon the evidence presented at trial, Schultz' claim for IIED against Advocate is preempted by the Illinois Workers' Compensation Act. Furthermore, based on the trial evidence, no reasonable jury have found that Advocate retaliated against Schultz for exercising his FMLA rights or interfered with Schultz' ability to exercise such rights. Accordingly, the jury's verdict should be vacated in its entirety and judgment as a matter of law should be entered for Defendants on all of Schultz' claims.

## ARGUMENT

Under Rule 50, a court should grant judgment as a matter of law when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R. Civ. P. 50(a). This is essentially the same standard that is applied on summary judgment. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Under this standard, the jury's verdict against Defendants cannot stand.

**I.     SCHULTZ FAILED TO PRESENT ANY LEGALLY SUFFICIENT EVIDENTIARY BASIS UPON WHICH A REASONABLE JURY COULD FIND ADVOCATE, JOHNSON OR CORNELISON LIABLE FOR IIED**

Under Illinois law, to prevail on his claim for IIED, Schultz was required to prove, as to each Defendant, that (1) the conduct of Defendants was "extreme and outrageous;" (2) Defendants "intended to inflict severe emotional distress or knew that there was at least a high probability that [their] conduct would inflict severe emotional distress;" and (3) Defendant's conduct did, in fact, cause "severe emotional distress." *Van Stan v. Fancy Colours & Co.*, 125 F.3d 563, 567 (7th Cir. 1997). Based upon the evidence submitted at trial, no reasonable jury

could have found that Schultz satisfied his burden of proof with regard to any of these elements as to any of the Defendants.

### A. The Trial Evidence Establishes As A Matter Of Law That None Of The Defendants Engaged In "Extreme And Outrageous" Conduct

Under Illinois law, "[c]onduct is extreme and outrageous only if the conduct has been so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency." *Van Stan*, 125 F.3d at 567. "Mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities do not amount to extreme and outrageous conduct, nor does 'conduct characterized by malice or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.'" *Id.* (quoting *Public Finance Corp. v. Davis*, 66 Ill.2d 85, 360 N.E.2d 765, 767 (1976)). "Liability only attaches in circumstances where the defendant's conduct is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency.'" *Graham v. Commonwealth Edison Co.*, 318 Ill. App. 3d 736, 742 N.E.2d 858, 867 (1st Dist. 2000) (quoting *Public Finance Corp.*, 66 Ill.2d at 90, 360 N.E.2d at 767).

In the employment context, the standard for "extreme and outrageous" conduct is particularly stringent because, as the Seventh Circuit recognized in *Van Stan*, "personality conflicts and questioning of job performance are unavoidable aspects of employment ... that frequently ... produce concern and distress." *Van Stan*, 125 F.3d at 567. Schultz' IIED claims is exactly the type of claim that Illinois courts the Illinois Appellate Court explained that courts "hesitate" to sustain claims because "if everyday job stresses resulting from discipline, personality conflicts, job transfers or even terminations could give rise to a cause of actions for intentional infliction of emotional distress, nearly every employee would have a cause of action." *Graham*, 318 Ill. App. 3d at 746, 742 N.E.2d at 867.

In Count III of his First Amended Complaint ("FAC"), Schultz claims that the actions of Defendants' Johnson, Cornelison and Advocate in "forcing Plaintiff to choose between caring for his seriously ill parents or meeting work production quotas, were extreme and outrageous" (FAC ¶ 42). In his deposition, which was admitted as evidence at trial, Schultz testified that his IIED claim against Advocate is based entirely upon Advocate's alleged failure to properly oversee the manner in which Johnson and Cornelison treated Schultz while he was on FMLA leave. As for Johnson and Cornelison, Schultz testified that they interfered with his FMLA leave by giving him unreasonable work quotas while he was on leave and that they intentionally inflicted extra work upon him that they knew he could not keep up with and then held it against him. These allegations are patently insufficient to establish a claim for IIED under Illinois law. Indeed, courts routinely deny claims for IIED that are based upon nothing more than a plaintiff's claim that he was subjected to intentional discrimination.[2]

---

[2] *See e.g. Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993) (plaintiff failed to establish a claim for IIED where her employer discriminated against her, demoted her, falsely accused her of poor performance, threatened her with discipline, monitored her telephone calls with an eavesdropping device, and ignored her concerns for her property and personal safety); *Ackerman v. City of Harvey Police Dept.*, 1998 WL 67632, at *6 (N.D. Ill. Jan. 29, 1998) (plaintiff failed to establish a claim for IIED where her employer "intentionally interfered with [her] religious practices, attempted to sabotage her career with unwarranted and untrue poor evaluations, mocked and degraded her with uniform requirements which were not applied to others, and 'tried to terrorize her and intimidate her into submission by interrogating her for hours on end'"); *Briggs v. North Shore Sanitary Dist.*, 914 F. Supp. 245, 252 (N.D. Ill. 1996) (allegations that the plaintiff's employer hung a "pickaninny" doll in her office, subjected her to racial slurs, excluded her from office social activities, placed her on probation, and refused to train her properly did not constitute "extreme and outrageous" conduct); *Henderson v. Hilton Hotels Corp.*, 1994 WL 684947, at *5-11 (N.D. Ill. Dec. 6, 1994) (plaintiff failed to establish a claim for IIED where her supervisor allegedly verbally abused and berated plaintiff with intent of upsetting her, placed her in a near impossible situation to maintain her job security, applied non-existent policies and procedures, and terminated her); and *Miller v. Equitable Life Assur. Soc.*, 181 Ill. App. 3d 954, 956, 537 N.E.2d 887, 889 (1st Dist. 1989) (conduct did not meet the IIED standard where supervisors ignored or criticized plaintiff's requests for job training and assistance, ridiculed her job performance, threatened her with loss of her job, and refused to let

Notwithstanding the allegations of Schultz' First Amended Complaint and his sworn deposition testimony, Schultz introduced "evidence" at trial that, viewed in the light most favorable to Schultz, established that Defendants Johnson and Cornelison engaged in the following conduct: put Schultz on a Development Plan in August 2000, shortly after Schultz' mother died; gave him a written warning based upon the verbal altercation Schultz had with Tony Geannopoulos on or about August 24, 2000, which was subsequently overturned by the Director of the Support Services; held him accountable for floor inspections and repairs that were not performed when Schultz was off work; Johnson kept a list of employees' names in a book that he was keeping an eye on; Johnson referred to Schultz as an "asshole" outside of Schultz' presence; Johnson wrote up Schultz for taking an unauthorized smoking break in 1999; Johnson told Geannopoulos to "get" Schultz; Johnson told other employees, not Schultz, that he could "eliminate" them with "the stroke of a pen"; Johnson followed Schultz around and kept tabs on him; Johnson assigned Schultz extra work in 1998 and 1999, beyond that assigned to other maintenance mechanics; Johnson refused to assign Schultz help one time in 1997 when Schultz was driving the Bobcat moving a salt pile; Johnson instructed Duncan Schelling to write up Schultz in 1997 for being in the office when Schultz was supposed to be outside (Schelling never did so); and after Schultz' wife Rita complained to Human Resources about Tony Geannopoulos in 1997, Johnson moved Schultz from a position working outside to an position working inside the Hospital, and stopped having lunch with him and otherwise being his friend.

her get police assistance when a co-worker hit her and threw coffee at her, and frequently encouraged her to use sex to make sales).

5

As a matter of law, none of this conduct, either individually or collectively, rises to the level of "extreme and outrageous."[3]  In contrast to the evidence presented at trial, courts have allowed IIED claims in the employment context only where the conduct is truly egregious.  *See e.g., Pavilon v. Kaferly*, 204 Ill.App.3d 235, 561 N.E.2d 1245, 1251-52 (1st Dist. 1990) (the plaintiff's employer offered her money in return for sexual favors, fired her after she refused, and then threatened to rape and kill her, and to file a legal action challenging custody of her child); *Milton v. Illinois Bell Tel. Co.*, 101 Ill.App.3d 75, 427 N.E.2d 829, 832 (1st Dist. 1981) (employer engaged in an extensive course of disciplinary and harassing conduct to coerce employee to falsify work reports and retaliated against plaintiff when he refused).  In fact, in *Fang v. Village of Roselle*, 1996 WL 386556, at *4 (N.D. Ill. July 5, 1996), the court noted that "most conduct by an employer that falls short of attempted coercion into a crime or sexual misconduct, even if such conduct is illegal, has fallen short of the 'outrageous' behavior required by case law."  Here, the evidence presented at trial to support Schultz' IIED claims against Defendants does not even come close to the level of egregiousness necessary to sustain an IIED claim.  Accordingly, this Court should enter judgment as a matter of law in favor of all Defendants with regard to Schultz' IIED claim.

At the very least, judgment as a matter of law should be entered in favor of Defendants Advocate and Cornelison.  Nearly all of the evidence at trial concerned the manner in which Schultz was treated by Johnson, not Cornelison.  In fact, much of this evidence concerned events that that pre-dated Cornelison's employment at the Hospital.  Moreover, Schultz himself testified that Johnson's misconduct towards him was the product of a complaint that Schultz' wife, Rita,

---

[3]     As discussed in Defendants' Motion for a New Trial, much of this evidence should not have been admitted.

made to Human Resources about Johnson's friend Tony Geannopoulos. On this evidence, no reasonable jury could conclude that Johnson's or Cornelison's tortious conduct was in furtherance of Advocate's business. *See Hunter v. Countrywide Assoc. for the Handicapped, Inc.*, 710 F. Supp. 233, 239 (N.D. Ill. 1989) (Bua, J.) ("[t]o hold an employer liable for the intentional torts of his employees under the doctrine of *respondeat superior*, plaintiff must show that the torts were committed in furtherance of the employment" and the "tortfeasing employee must think, however misguidedly, that he is doing the employer's business in committing the wrong"). Therfore, Advocate cannot be held liable for such conduct.

**B.      The Trial Evidence Establishes As A Matter Of Law That Defendants Did Not Act With The Requisite Intent To Cause Schultz Severe Emotional Distress**

Schultz introduced no evidence at trial upon which the jury could have reasonably concluded that Defendants intended to cause Schultz severe emotional distress. In fact, the evidence shows the opposite - that during 2000, Johnson and Cornelison took steps to help Schultz, by increasing the number of deficiencies he was allowed to have on his monthly floor inspections, and by placing on him on a second Development Plan in August 2000 after Schultz had failed to meet the requirements and objectives of his earlier Development Plan (a step which is virtually unheard of at the Hospital). In addition, when Schultz' mother passed away, Cornelison attended the wake, and both Johnson and Cornelison told Schultz they would help him. These are hardly the actions of men who are looking to cause Schultz severe emotional distress.

**C.      The Trial Evidence Establishes As A Matter Of Law That Schultz Did Not Experience *Severe* Emotional Distress.**

Schultz' IIED claim also fails as a matter of law because Schultz cannot show that he suffered "severe" emotional distress. To make this showing, Schultz must present evidence that

7

the emotional distress he suffered was "so severe that no reasonable person could be expected to endure it." *Graham*, 318 Ill. App. 3d at 745, 742 N.E.2d at 866. Schultz introduced no such evidence at trial. Significantly, Schultz was able to seek and obtain another job almost immediately after his termination and has been working steadily ever since. Furthermore, the only evidence of Schultz' emotional distress was the testimony of Dr. Sudhir Gokhale. Although Dr. Gokhale testified that he diagnosed Schultz with clinical depression and that Schultz had occasional suicidal feelings, this does not amount to "severe" emotional distress as a matter of law. *See Roy v. Austin Co.*, 1996 WL 599435, at *7 (N.D. Ill. Oct. 16, 1996) (court held as a matter of law, the plaintiff's claim that he suffered from "depression, isolation, humiliation, shame and thoughts of suicide" did not constitute "severe" emotional distress). Furthermore, Dr. Gokhale testified that during the first few appointments he had with Schultz, Schultz made moderate improvement, that on a scale of 1-10, with 0 being the worst and 10 being the best, Schultz went from a 6 to a 7, one point below the range for persons who are coping well with every day life. In addition, Schultz repeatedly told Dr. Gokhale that he liked his new job, that he was doing "okay" and that although he would get down at times, he would not stay down. And, although Dr. Gokhale recommended that Schultz attend individual therapy, Schultz told Dr. Gokhale that he had "no time" for that. On this evidence, no reasonably jury could conclude that Schultz suffered "severe" emotional distress.

**D.    The Trial Evidence Establishes As A Matter Of Law That Defendants' Conduct Did Not Cause Schultz' Emotional Distress**

Schultz presented no evidence at trial upon which the jury could reasonably have found that his emotional distress was actually or proximately caused by Defendants.[4] During his first

---

[4]    The verdicts are also defective because they fail to distinguish distress caused by Johnson from distress caused by Cornelison.

appointment with Dr. Gokhale, Schultz told Dr. Gokhale that he had a family history of depression and that there were a number of things in his life that were causing him stress. In order, Schultz told Dr. Gokhale about the stress he experienced taking care of his father, then, he told him about his brother not helping, then, he told him about the hurt he felt from the loss of his job, and lastly, he told him about the stress of the lawsuit.

Significantly, Dr. Gokhale never rendered an opinion that Johnson or Cornelison's conduct caused Schultz's depression. In fact, Dr. Gokhale testified that he had no recollection of Schultz ever mentioning Johnson or Cornelison to him during any of their appointments. Dr. Gokhale testified that Schultz' depression was caused by a number or stressors in his life, all of which contributed and compounded his symptoms, including his mother's death, his father's illness, the amount of attention his father needed, the fact that his brother was not helping to care for his father, and the loss of his job.[5] Based on this evidence, no reasonable jury could have found that Schultz' emotional distress was caused by Defendants' tortious conduct.

## II.     SCHULTZ' IIED CLAIM IS BARRED BY THE ILLINOIS WORKERS' COMPENSATION ACT

Although Defendants have not previously raised this issue, the evidence at trial clearly shows that Schultz' IIED claim against Advocate is preempted by the Illinois Workers' Compensation Act ("IWCA"), which provides the exclusive remedy for accidental workplace injuries. Specifically, the IWCA provides, in relevant part, that "[n]o common law or statutory right to recover damages from the employer ... or the agents or employees of ... [the employer] for injury or death sustained by any employee while engaged in the line of his duty ..., other than

---

[5]     Significantly, Dr. Gokhale's  opinion that the loss of Schultz' job contributed to his depression must be distinguished from an opinion that the alleged "extreme and outrageous" conduct of Johnson and Cornelison caused his depression. To that point, *no* evidence was presented to the jury. And, as a matter of law, Defendants' termination of Schultz was not "extreme and outrageous" conduct. *See Van Stan*, 125 F.3d at 569.

the compensation herein provided, is available to any employee who is covered by the provisions

of this Act ...." 820 ILCS 305/5. Both the Seventh Circuit and this Court have held that this

provision of the IWCA bars employees from asserting claims for IIED against their employers

where such claims are, as in this case, based upon the actions of co-employees that were neither

commanded nor expressly authorized by the employer. *See Hunt-Golliday v. Metropolitan*

*Water Reclamation District of Greater Chicago*, 104 F. 3d 1004, 1016 (7th Cir. 1997); *Juarez v.*

*Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 324 (7th Cir. 1992); *Jansen v. Packaging*

*Corp. of America*, 895 F. Supp. 1053, 1069-70 (N.D. Ill. 1995) (Shadur, J.); *Al-Dabbagh v.*

*Greenpeace, Inc.*, 873 F. Supp. 1105, 1112-14 (N.D. Ill. 1994) (Shadur, J.).

Under Illinois law, "an injury that was intentionally inflicted upon an employee by

another employee nevertheless is considered 'accidental' on behalf of the employer if it was

unexpected and unforeseen by the injured party, unless the employer expressly authorized the co-

employee to commit the tort." *Hunt-Golliday*, 104 F.3d at 1016 (citing *Meerbrey v. Marshall*

*Field and Co.*, 139 Ill.2d 455, 463, 564 N.E.2d 1222 (1990)). In order to avoid IWCA

preemption of his IIED claim against Advocate, Schultz had to prove that either Advocate, or its

"alter ego," intentionally inflicted emotional distress upon him, or that the acts of Johnson and

Cornelison were "commanded or expressly authorized" by Advocate. *Hunt-Golliday*, 104 F.3d

at 1016-17. The mere fact that Johnson and Cornelison may have been acting within the scope

of their authority "does not equal authorization by [Advocate] for the commission of an

intentional tort" - under the IWCA, employees are barred from "bringing common law actions

against their employers based solely upon the respondeat superior doctrine." *Hunt-Golliday*, 104

F.3d at 1017.

Schultz presented no evidence that Advocate engaged in any extreme and outrageous conduct with the specific intent to cause him severe emotional distress. Nor did Schultz present any evidence upon which a reasonable jury could conclude that either Johnson or Cornelison is the "alter ego" of Advocate. Illinois law draws a distinction "between a supervisory employee and a person who can genuinely be characterized as the alter ego of the corporation." *Poulos v. Village of Lindenhurst*, 2002 U.S. Dist. LEXIS 16596, *49 (N.D. Ill. August 30, 2002) (Plunkett, J.). "Status as a foreman, supervisor, or manager alone, without the authority to make decisions and set policy on behalf of an employer, will not suffice to render an intentional tortfeasor an alter ego." *Id.*

Furthermore, Schultz presented no evidence that Advocate "commanded or expressly authorized" either Johnson or Cornelison to engage in any tortious actions toward Schultz. In *Jablonski v. Multack*, 63 Ill. App. 3d 908, 380 N.E.2d 924, 927 (Ill. App. Ct. 1990), the court held that only *express authorization* - as opposed to a failure to act - will expose an employer to liability. Thus, notwithstanding any evidence that Advocate failed to intervene and stop Johnson's and Cornelison's alleged tortious conduct after Schultz complained to Human Resources, this does not, as a matter of law, constitute "express authorization" of their conduct. *See Poulos*, 2002 U.S. Dist. LEXIS 16596 at *49 ("Illinois courts will hold employers liable only for their sins of commission, not for their sins of omission").

The evidence at trial also establishes, as a matter of law, that Schultz' alleged emotional distress injuries arose out of and were received during the course of his employment at Advocate. In *Collier v. Wagner Castings Co.*, 81 Ill. 2d 229, 408 N.E.2d 198 (1980), the Illinois Supreme Court held that the plaintiff's emotional distress injuries, which were inflicted by a co-employee, arose from the plaintiff's employment where the events causing the plaintiff's distress were

11

"inextricably connected to his employment." *Id.* at 202. *See also Orsini v. Industrial Comm'n.*, 117 Ill. 2d 38, 509 N.E.2d 1005, 1008 (1987) (an injury "arises out of" one's employment where there is a "causal connection between the employment and the injury"); *Juarez*, 957 F.2d at 324 (emotional distress which arises out of sexual harassment in the workplace is "inextricably connected to" and thus, "arose from" the plaintiff's employment). On the other hand, an injury does not arise out of one's employment if it "results from a hazard to which the employee would have been equally exposed apart from the employment." *Orsini*, 117 Ill. 2d 38, 509 N.E.2d at 1008-09.

Here, as a matter of law, Schultz' emotional distress arose from and was received during the course of his employment insofar as all of the conduct of Johnson and Cornelison that allegedly caused this distress occurred at work and was, thus, "inextricably connected to" Schultz' employment. Consequently, because the trial evidence establishes that Schultz' claim against Advocate for IIED is preempted by the IWCA, judgment as a matter of law must be entered in favor of Advocate as to this claim.

**III.    THE TRIAL EVIDENCE AS A MATTER OF LAW FAILS TO SUPPORT THE JURY'S FINDING THAT ADVOCATE RETALIATED AGAINST SCHULTZ FOR EXERCISING HIS RIGHTS UNDER THE FMLA**

Schultz presented no evidence at trial upon which a reasonable jury could have found that he was terminated in retaliation for exercising his rights under the FMLA. To prevail on this claim, Schultz had to prove that Advocate's decision to terminate his employment was motivated by an impermissible retaliatory animus, and that Advocate intentionally took action against him because he exercised rights under the FMLA. *See* 29 U.S.C. § 2615; *Horwitz v. Avoca School District No. 37*, 260 F.3d 602, 616 (7th Cir. 2001); *King v. Preferred Technical Group*, 166 F.3d 887, 891 (7th Cir. 1999). Schultz presented no such evidence at trial. Indeed, the evidence at trial showed that Schultz believed at one time or another that he was terminated in retaliation for

a variety of things unrelated to his FMLA leave - the August 2000 incident with Tony

Geannopoulos, his successful grievance arising out of this incident, and the acrimony between

him and Al Johnson that began when Schultz' wife, Rita, complained to Human Resources about

Tony Geannopoulos. Schultz presented no evidence upon which a reasonable jury could have

concluded that he was terminated because he took FMLA leave. In fact, the evidence shows the

opposite - that Schultz was granted all of the FMLA time that he requested and that his work

requirements were adjusted on at least two occasions in 2000 to better enable him to adequately

perform his job. Rather than proving unlawful retaliation, the trial evidence establishes that

Schultz was terminated because of his poor job performance and his failure to meet the standards

of the Building Operations department's service excellence program. Specifically, Schultz failed

to meet departmental standards for maintaining his floor in 8 out of 10 months in 2000, and

failed to turn in required inspection reports in 6 out of 10 months in 2000. Despite efforts that

were made to help Schultz improve his performance, Schultz failed to improve and, thus, his

employment was terminated.[6] Based on the trial evidence, no reasonable jury could have

concluded that this decision was made in retaliation for Schultz' exercise of his FMLA rights.

## IV. THE TRIAL EVIDENCE AS A MATTER OF LAW FAILS TO SUPPORT THE JURY'S FINDING THAT ADVOCATE INTERFERED WITH SCHULTZ' ABILITY TO EXERCISE HIS FMLA RIGHTS

Schultz presented no evidence at trial upon which a reasonable jury could have found that

Advocate interfered with Schultz' ability to exercise his rights under the FMLA. To sustain this

claim. Schultz had to present evidence proving that Advocate refused to authorize his requests

---

[6]     The evidence does not support Schultz' claim that his poor performance was a result of
the time he took off under the FMLA. The evidence shows that in 2000, Schultz took 48 hours
of FMLA time. While Schultz attempted to prove that he took much more time than this, the
evidence Schultz presented on that issue was entirely speculative and patently insufficient. As
demonstrated by Defendants, it was impossible for Rita Schultz to have calculated the number of
FMLA hours Schultz took in 2000 by looking at his pay stubs.

for FMLA leave, discouraged him from using such leave, or engaged in other acts of manipulation to avoid its responsibilities under the FMLA. *See* 29 C.F.R. § 825.220(b); *Kohls v. Beverly Enterprises Wisconsin, Inc.*, 259 F.3d 799 (7th Cir. 2001). Here, the evidence is undisputed that Schultz received all of the days off he requested under the FMLA. Schultz was never denied any time off work to take care of his parents, even when he failed to follow the proper procedures. Schultz continued working as a Maintenance Mechanic and his health insurance was kept intact during the time that he was caring for his parents. Johnson and Cornelison would adjust Schultz' schedule when he needed to be off work to care for his parents. Schultz is left with a claim that he subjectively desired more FMLA leave, a contention never communicated to Advocate and one for which Advocate cannot he held liable.

## V. THE TRIAL EVIDENCE AS A MATTER OF LAW FAILS TO SUPPORT THE JURY'S AWARD OF PUNITIVE DAMAGES AGAINST DEFENDANTS

Finally, even if the jury's verdict on Schultz' IIED claim is upheld, the jury's award of punitive damages against Defendants is legally insufficient and must be vacated. Schultz presented no evidence of willful and wanton conduct on the part of either Johnson or Cornelison. Schultz likewise presented no evidence that Advocate expressly authorized, ratified or approved of the tortious conduct of Johnson and Cornelison. Nor was any evidence presented upon which the jury could have reasonably concluded that Johnson and Cornelison are "managerial employees" of Advocate, whose actions could subject the corporation to punitive damages. *See Hertzberg v. SRAM Corp.*, 261 F.3d 651, 663 (7th Cir. 2001) (whether an employee is a "managerial agent" for purposes of assessing punitive damages against a corporation is "necessarily a fact-intensive inquiry driven by the kind of authority the employer has given the employee, the amount of discretion given to the employee in executing his job duties, and the manner in which those duties are carried out") (holding that a shipping department manager who

14

had "little discretion in hiring, disciplining or terminating employees that reported to him" and who had "no power to terminate employees" without the plant manager's approval was not a "managerial agent"). The evidence was plain that neither Johnson nor Cornelison had the power to terminate Schultz; rather, this decision had to be approved by Cornelison's supervisor and approved by the Vice President of Human Resoures. Accordingly, as a matter of law, the jury's award of punitive damages must be set aside.

## CONCLUSION

For all of the foregoing reasons, the Court should set aside the jury's verdict and enter judgment as a matter of law, pursuant to Rule 50 of the Federal Rules of Civil Procedure, in favor of all Defendants.

Respectfully submitted,

ADVOCATE HEALTH and HOSPITALS
CORPORATION, BRIAN CORNELISON and
ELMER JOHNSON

By _____
One of Their Attorneys

Joan E. Gale
David E. Metz
Seyfarth Shaw
55 East Monroe Street
Suite 4200
Chicago, Illinois 60603
(312) 346-8000

November 14, 2002

15

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that he caused a true and correct copy of Defendants'

Memorandum of Law in Support of Their Renewed Motion for Judgment as a Matter of Law to

be served upon:

> Charles Siedlecki, Esq.
> Charles Siedlecki & Associates, P.C.
> 15 Spinning Wheel Road, Suite 328
> Hinsdale, Illinois 60521

via overnight delivery on this 14th day of November, 2002.

David E. Metz

CH1 10449502.1